Next case for argument is Holleman v. Zatecky. Dushan Zatecky Thank you, Your Honor. Good morning, and may it please the court, Jessica Lindeman of Barnes and Thornburg, on behalf of the appellant, Robert Zatecky, or I'm sorry, Robert Holleman. In one sense, this case is about where a person lives and whether that matters. Why? Well, my client has a claim for First Amendment retaliation. As this court knows, there are three factors relevant to that claim that he must establish. First, whether he engaged in protected conduct. That's been conceded. He complained to a newspaper about the medical treatment at the facility, and two days later, he was transferred. Factor three, whether his protected conduct motivated the retaliatory action. That factor is also conceded, at least as to Defendant Zatecky. So we're here now focused on factor two, whether this transfer would deter an ordinary person from engaging in protected conduct. Counsel, I have a question, actually, about, I've been trying to figure out if this is a factor three or a factor two question. But it seems to me that the warden, what's unusual about this case is that it was in response to complaints about prison conditions. And what's unusual is trying to figure out whether that's retaliation or whether there are circumstances in which a response is merely responding to a complaint, although maybe not in the way that the prisoner wanted the warden to respond. And I'm thinking about what might happen in the next case, depending on how we decide this case. So how do we know? It is true that it is established in the record, I agree, that the warden did this in response to the plaintiff's complaints. How do we know that it's retaliatory? Is there any evidence that the warden knew that the conditions were going to be worse in the prison to which he was transferred? Well, I think that to answer your question, and I agree that that is a very important question in this case. And I do agree that there could be circumstances where moving someone, for example, if someone wanted a kosher kitchen, moving them to a facility where there was a kosher kitchen, no problem, right? But I think we have to take a step back here and look at the history of these parties' relationship to understand why there was a genuine issue of material fact as to whether this was retaliatory versus trying to actually solve a problem. And I think that's where the district court's opinion took a step in the wrong direction. Well, I mean, I understand that there was a history of acrimony between the warden and the plaintiff. I do understand that. But I guess, you know, it still has to be that this action was retaliatory. Or maybe the way to think about it is that it had to be clearly established from the perspective of the warden that what he was doing would deter someone of ordinary firmness, because that would mean it was retaliatory. But, I mean, imagine this. Let's say that the prisoner is complaining about conditions in his cell. So what the prisoner wants is for the warden to remedy those conditions in his cell, say the toilet's not functioning or there are bugs or something like that. Instead, the warden, who is very annoyed with this prisoner, decides not to do that. He's responding, and there's no doubt, let's say, that the warden finds this guy to be an irritant. He puts him in a different cell. And unbeknownst to the warden, this cell is right next to someone who is very loud and wails and screams all night long, and now the prisoner finds himself in a worse situation because he can't sleep at night. Is that retaliatory? I mean, the warden was annoyed by the prisoner. The warden didn't respond to the complaints in the way the prisoner wanted. He moved him instead of redressing the situation in the cell. But the warden didn't know that the situation was going to be worse. How does that play out as you think about the framework? Well, it's a good question. And I think that if the warden is acting in a way, and I think moving a cell to sort of the same character of cell is a little bit different context than transferring from where someone lives, in the sense that if we have a holding here that a transfer between sort of the same level of conditions in and of itself, which I think is the position that they're urging, can never be enough, then you could have a scenario where someone has lived somewhere for 25 years. They have friends. They have a job. And maybe from an objective person's- You're talking about in prison, right? Yes, exactly. And perhaps that there's no suggestion that the situation, the lateral transfer, is objectively worse in terms of housing or anything else. But they have human connections. They have a life there. And while they may not have a property interest in that, you still can't just move someone because they have engaged in protected conduct. And also, here we have the situation where the justification that's been offered on its face is pretextual in light of the complaint that the prisoner has asserted. So he's saying that there's inadequate medical treatment. And then the justification in this litigation after 30 days to respond to interrogatories is, well, we wanted him to move to a more modern facility. Well, the medical care is provided by a single provider across the DOC. So there is ample reason to suspect that that justification just has no nexus to the conduct that's at issue here. And so there was ample reason to doubt that it's actually trying to solve a problem. So is that the standard then? It's retaliatory if it's motivated in any part by animus? I think that's the definition of retaliatory. To get revenge, to some extent, is the definition of what it means to retaliate. Well, what if it's in another framework where – I don't know what – I'll call them wardens. They've got different titles, I think. Warden, superintendent. I think it's changed. Yeah. Whatever it is, one warden to another says, we've got a guy we want to get rid of. Have you got one? And he said, yeah. So it was reciprocal. I think that's what you're trying to lead up to. But there were other reasons. A lot of gripes about the prison. And maybe you could say we're trying to get him out of there where he has all these problems that no one else seems to have or whatever. So we'll find a prison where it's newer and has more facilities, et cetera. And, of course, he goes somewhere else and then finds out a lot of things he doesn't like about that either. So I think any of us would look at that and say, yeah, no prison is your favorite home. That's where you are. But you have friends. And he probably had a constituency because he apparently won a couple of lawsuits. Yes. He's a very capable advocate. And I think that was part of the problem that Defendant Zetecki had with Mr. Holloman is that – and you see it even in the record and some of the e-mail traffic – that his issue wasn't that Mr. Holloman was complaining. It was that he was a successful and effective litigant both on behalf of himself and on behalf of others. Which has an effect on the whole prison and control, et cetera, about someone who's advocating and agitating others. And so now they say, well, this guy's an agitator into somebody and he needs to be somewhere else because he has too many contacts in this prison where he's disrupting the management of the prison. Well, I think that there is a constitutional right to advocate and access the court, even as a jailhouse lawyer, so to speak. So the louder the mouth, the safer he is, huh? Without getting transferred. Well, I don't know if I'd put it that way. Well, I know you wouldn't. And if I could, I'd like to – unless the court has any more immediate questions, I'd like to reserve the balance of my time for rebuttal. Certainly, counsel. Ms. Rice. May it please the court. This court should affirm the decision below for the following two reasons. First, the defendants did not violate any clearly established constitutional right. And second, Hallman did not suffer a deprivation. I turn to my first point that qualified immunity applies because neither this court nor the Supreme Court have ever held that a transfer from the general population of one maximum security facility to the general population of another maximum security facility because of First Amendment activity is actionable. But, counsel, we do have this case, Babcock, that says if it's retaliatory, then qualified immunity doesn't apply because essentially officers are in notice that they can't retaliate. And it is a broader definition of qualified immunity than maybe some others, but if that's the case and the warden, it doesn't matter what form the retaliation took, if the warden was retaliating, presumably he's not entitled to qualified immunity under Babcock. I think that that statement assumes, though, that all the elements of a retaliation claim have been met and that there was a deprivation, but there was no deprivation in this case. And also, that is stating the law at way too broad a level of generality, and under that theory, as we kind of hinted at earlier, any transfer decision whatsoever would be actionable. So a transfer from a maximum security facility to a minimum security facility would be actionable. And then that case was decided before the Supreme Court has repeatedly held that a rule is too general if the unlawfulness of the official's conduct does not follow immediately from the conclusion that the rule has been firmly established. Okay, so your position then is that the relevant inquiry from the perspective of qualified immunity is whether it is clearly established that a particular action counts as something that's retaliatory? A particular action what? Counts as something that's retaliatory? Yes. And it certainly wouldn't have been clear to a person in the defendant's position that their conduct was unlawful because all the cases in this circuit deal with a transfer to a much more obvious, harsher environment. But counsel, can that be right? What if the warden says, you know, listen, you've been complaining a lot and I'm tired of it, so I'm going to order the cafeteria to serve you the exact same thing to eat every single day, three meals a day. And there's no case on point establishing that changing someone's diet in that manner is retaliatory. You're saying that he would still be entitled to qualified immunity? I think that that would be a closer case. But here, it wouldn't be clear to someone in the defendant's position that their conduct was unlawful because even if we look at the other circuits, the Sixth Circuit says the exact opposite, that a purely lateral transfer is not actionable. I mean, I understand that and I understand the problem. As my hypo to the plaintiff suggested, I see the problem here, but I'm trying to figure out what the analytical framework is. Is it that this doesn't meet the definition of retaliatory? Or is it that someone in the warden's position would not perceive such a transfer as something that would deter a person of ordinary firmness from exercising First Amendment rights? I mean, tell me why you think this fails. I think it's both of those factors. It doesn't meet the definition and a reasonable person wouldn't have understood that their action was retaliatory. So if we talk about the deprivations, there are three in this case. There are that he has three hours less law library time per week, he has a roommate so he has less privacy, and that he witnesses more violence. If we turn to the law library and the cellmate, although those may have been less convenient or less favorable, those restrictions are minor compared to the cases where the transfer was found to be sufficient or actionable. Did the warden know, is there any evidence in the record that the warden knew that he was going to have a roommate or less access to the prison library or that the prison was more violent? There's absolutely no evidence in the record that the warden knew. That argument is not based on personal knowledge and the district court specifically noted that that would be inadmissible evidence. And apparently the defendants couldn't have known because, as Hellman stated, only 25% of incidents of violence are actually reported. So as far as the violence also, there's nothing in the record comparing the two different facilities. So we have evidence about Wabash Valley, but we have nothing about Pendleton. And if we look at the record, if we look at the data that Hellman has provided, those statistics, those offenses are only from 2017. They're not from 2015 when he was actually transferred. And it was his burden to establish this to defeat qualified immunity. And if we look at the list of offenses, it's not that violent. If we look at 121 through 124 of the appendix, there are only three A-level battery offenses over the course of an entire 10-month period. There are 19 B-level battery incidents, and there's 19 C-level fighting incidents. An ordinary person of firmness in Hellman's position would not be deterred from exercising in First Amendment activity for witnessing 19 C-level offenses over the course of a 10-month period, and certainly not for only having four hours versus seven hours of law library time or having a cellmate. In fact, some prisoners may prefer to have a cellmate because it provides some protection, or some prisoners may not care about the law library at all. And at the end of the day, prisoners may be required to tolerate more than an average citizen before an action taken against them is considered to be adverse. They're not required to be knowingly put in segregation or knowingly be put in danger, or if we're looking at other cases, knowingly being transferred from a psychiatric unit where they can't accommodate his needs to the general population of another unit that doesn't even have a psychiatric unit. They're not required to tolerate that, but they may be required to have a roommate, a cellmate. They may be required to have only four hours of law library time a week, and they may be required to witness C-level offenses. And if this court finds, for some reason, that qualified immunity doesn't apply because there was a deprivation, this court should dismiss the case as to all other defendants except Setecki because there's no causation, there's no third element as to those defendants. As to the non-supervisors, the statements upon which opposing counsel relies in the brief are all inadmissible double hearsay. And as far as the supervisors, Osborne, he was not put on knowledge of First Amendment activity because the email chain only talks about the other offender. It doesn't talk about Holloman. And Hendricks, although he received a letter from Holloman about the alleged retaliation, there's no evidence to suggest that he actually read that letter, Setecki read the letter, or that Hendricks read the letter. So it would be insufficient to create a genuine issue of material fact. And just briefly to address some of the arguments raised for the first time in the reply brief, this case is not similar to Higgison. Opposing counsel compares that to Higgison where he was transferred from a unit in the facility. So he was transferred from the general population to a different unit, and in that unit he was segregated from the general prison population, and that's not what we have here. There's no evidence to suggest that Holloman doesn't go to meals, recreation time, doesn't have access to, can't go to his job, and it's just not similar to Higgison. And as far as the argument presented also for the first time in the reply brief, comparing this case to Sigerzell, in that case the transfer prevented the prisoner's lawyer from reviewing his legal documents, and the defendants knew that by transferring him there, he would not be able to meet with his attorney to discuss his appeal. That's not what we have in this case. Here Holloman still could go to the law library. He still could access the law materials. There's no evidence that he couldn't check out the materials, and Holloman has never stated that the defendants transferred him so that he would not be able to access the law library. If there are no further questions, this court should affirm the decision below. Thank you. Thank you, Ms. Weiss. Anything further, Ms. Lindemann? I would just like to point this court to the decision in Higgison and specifically what this court said in that case. Quote, if a prisoner is transferred for exercising his right of access to the courts or for assisting others in exercising their right of access to the courts, he has a claim under Section 1983. Period. Full stop. That's what this court said. As to the deprivations, I think counsel suggested that Mr. Holloman doesn't have a right to a certain amount of law library time or a single cell or the kiosk and other privileges that he had in the dorm. Well, that's not the question. The question is... Thank you, counsel. Thank you. The case will be taken under advisement.